## NITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Chambers of
# Michael A. Hammer
United States Magistrate Judge

Martin Luther King Jr. Federal
Bldg. & U.S. Courthouse
50 Walnut Street, Room 2042
Newark, NJ 07102
(973) 776-7858

August 5, 2016

To:   James Anthony Rodriguez
      Plaintiff Pro Se
      284 Kipp Avenue
      Elmwood Park, NJ 07407

      All counsel of record

### LETTER OPINION AND ORDER

RE:   **Rodriguez v. Verizon Communications**
      **Civil Action No. 16-4202 (MCA)(MAH)**

Dear Litigants:

Presently before the Court is Plaintiff pro se Rodriguez's application for Pro Bono Counsel pursuant to 28 U.S.C. § 1915(e)(1) [D.E. 2]. For the reasons set forth below, Plaintiff's application is denied.

### Background

Plaintiff Rodriguez ("Plaintiff") brings a claim of Title VII Civil Rights violation in which his employer, Verizon Communications ("Verizon" or "Defendant"), is the named defendant. See Pl's Compl. July 8, 2016, D.E. 1, at 1-4.

Plaintiff claims Defendant failed to reasonably accommodate his religious beliefs. Id. at 5. Plaintiff also states that he filed a charge with the Equal Employment Opportunity Commission on November 24, 2015. Id. at 6.

Plaintiff is employed by Defendant as a technician. Pl's Compl. July 8, 2016, D.E. 1-2, at 1. Plaintiff states that he is a member of the Church of God, a Worldwide Association, a religious organization that observes the Sabbath from sunset on Friday to sunset on Saturday and observes 10-12 holy days throughout the year. Id. Plaintiff alleges that Defendant refuses to alter his rotating schedule to reasonably accommodate his religious practices. Id. Plaintiff's current work schedule requires him to work an average of three Saturday's per month. Id. Plaintiff alleges that Defendant insisted that he switch his own schedule with other employees. Id. Plaintiff states that

he then submitted an official religious accommodation request in 2009 in which he objected to switching shifts with other employees. Id. Plaintiff also writes that after receiving the first right to sue notice from Equal Employment Opportunity Commission in 2009, his supervisor, Dennis Ricca assured Plaintiff that this matter would be worked out. Id. Plaintiff indicates that this was not done to his satisfaction since his supervisor only offered to facilitate the approval of paid and unpaid time off. Id. Plaintiff states that he is only allowed 19 paid personal and vacation days. The remaining 29 days would be unpaid and he would suffer a loss of $9,000 in addition to the lost pay from Friday evenings. Id. Plaintiff also states that he would then be left with no vacation time or time for emergencies. Id.

Plaintiff alleges that there is nothing preventing Defendant from switching his schedule and providing him with other options. Id. According to Plaintiff, Defendant is alleging undue hardship because there is high demand for technicians on Friday nights and Saturdays. Id. Plaintiff also states that Defendant alleges that it would be unfair for Plaintiff's co-workers if he is not scheduled to work on Saturdays. Id.

Plaintiff contends that Defendant has failed to prove undue hardship. Id. at 2. Plaintiff states that despite alleging that there is high demand for technicians on Friday evenings and Saturdays, Defendant was able to function without him during the busiest times of business. Id. at 1. Plaintiff also states that despite Defendant saying that his demands are unfair to his co-workers, he was able to switch his own schedule without any complaints from co-workers. Id. Instead, Plaintiff maintains that a second level manager, who is no longer employed by Defendant, disclosed to him that the true reason for refusing to change his schedule is that "the company does not want to go down the slippery slope of setting a precedent of allowing time off for religious beliefs." Id. at 2.

Plaintiff is seeking compensation for the times he had to utilize his own personal and vacation times to observe his religious practice, totaling $21,635 to date. Id. at 3. Plaintiff is also seeking reimbursement for legal consultation fees and court associated fees. Id. In addition, Plaintiff is requesting a work schedule to accommodate his religious observance of the Sabbath. Id. Plaintiff is not claiming a specific amount for emotional damages because he states that it would be a conflict of interest for a pro bono Plaintiff to determine damages for his own "emotional turmoil, anguish, and worry induced by the company's threats and bullying tactics over the last seven years." Id. Plaintiff states that he would want the Court to determine whether punitive damages are permissible. Id.

## Discussion

In civil cases, neither the Constitution nor any statute gives civil litigants the right to appointed counsel. Parham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997). District courts, however, have broad discretion to determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e). Montgomery v. Pinchack, 294 F.3d 492, 498 (3d Cir. 2002) (citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)). Appointment of counsel may be made at any point in the litigation, including sua sponte by the Court. Montgomery, 294 F.3d at 498 (citing Tabron, 6 F.3d at 156).

In the Third Circuit, a court considers the framework established in Tabron. Montgomery, 294 F.3d at 498–99. Under the Tabron framework, the Court must first assess "whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d

at 499 (citing <u>Tabron</u>, 6 F.3d at 155).  If the applicant's case has some merit, the Court considers the following factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

<u>Parham</u>, 126 F.3d at 457–58 (citing <u>Tabron</u>, 6 F.3d at 155–56, 157 n.5).  This list is not exhaustive, but provides guideposts for the Court.  <u>Montgomery</u>, 294 F.3d at 499 (citing <u>Parham</u>, 126 F.3d at 457).  A court's decision to appoint counsel "must be made on a case-by-case basis." <u>Tabron</u>, 6 F.3d at 157–58.  Also, the Court of Appeals for the Third Circuit has stated that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."  <u>Montgomery</u>, 294 F.3d at 499 (citing <u>Parham</u>, 126 F.3d at 458).

Plaintiff states that "[t]he odds of prevailing are stacked against me with counsel. Odds are much worse without."  Nevertheless, for purposes of the instant motion to appoint pro bono counsel, the Court will assume that Plaintiff's complaint has at least some merit as he brings what appear to be potentially legitimate claims against Defendants.

Next, Plaintiff's case must be analyzed under each of the <u>Tabron</u> post-threshold factors. Ultimately, consideration of the <u>Tabron</u> factors demonstrate that appointment of counsel is not warranted at this time.

First, Plaintiff appears to be able to present his case.  When considering this first factor, courts generally review a plaintiff's education, literacy, prior work experience, and prior litigation experience.  <u>Tabron</u>, 6 F.3d at 156. Plaintiff was able to write his complaint and submit the motion to this court.  <u>See</u> Pl's Compl. D.E. 1, Mot. to Appoint Pro Bono Counsel, July 8, 2016, D.E. 2. Plaintiff is also employed by a large corporation as a technician and was able to submit a complaint to the Equal Employment Opportunity Commission, in which the determination was that Defendant violated Title VII and engaged in employment discrimination. <u>See</u> Pl's Compl. D.E. 1, 1-2.

Second, Plaintiff's claims do not involve complex legal issues.  Complexity supports appointment "where the law is not clear, [as] it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis."  <u>Tabron</u>, 6 F.3d at 156 (quoting <u>Macklin v. Freake</u>, 650 F.2d 885, 889 (7th Cir. 1981)); <u>accord</u> <u>Montgomery</u>, 294 F.3d at 502.  Courts also consider "the proof going towards the ultimate issue and the discovery issues involved."  <u>Parham</u>, 126 F.3d at 459; <u>see also</u> <u>Montgomery</u>, 294 F.3d at 502–03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised plaintiff's case).  Here, appointment of counsel is not warranted because the factual and legal issues involved in the case are not complicated.  <u>See</u> Pl's Compl.,

D.E. 1-2.  Accordingly, the second Tabron factor weighs against Plaintiff because it does not appear that his claims present complex legal issues.

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of Plaintiff to pursue such investigation. Plaintiff has provided specific details in the complaint. Id. Furthermore, Plaintiff works for a large company, where records are readily kept and are available. Plaintiff attached a copy of the Equal Employment Opportunity Commission's Determination of the issue, showing that Plaintiff has the ability to initiate an investigation and has access to records. See Pl's Compl., D.E. 1-3.

Fourth, it is premature for the Court to conclude that this case will turn on credibility determinations.  Because "it is difficult to imagine" a case where credibility is not important, the Court of Appeals for the Third Circuit has specified that "when considering this factor, courts should determine whether the case [is] solely a swearing contest."  Parham, 126 F.3d at 460.  At this early stage of the litigation, the extent to which this case will rest on credibility determinations is not yet apparent.  Accordingly, this factor militates neither in favor nor against appointing counsel.

The fifth factor for consideration is whether the case will require the testimony of expert witnesses.  Appointment of counsel may be warranted where the case will require testimony from expert witnesses.  Tabron, 6 F.3d at 156.  Here, it does not appear that expert testimony will be required. Since expert testimony will likely not be needed, the fifth factor weighs against appointing pro bono counsel.

Sixth, Plaintiff states that he has contacted 15 attorneys to represent him in this matter. Mot. to Appoint Pro Bono Counsel, D.E. 2, at 3. Plaintiff also states that all but one refused to represent him. Id. The one attorney that did not refuse stated that he would represent Plaintiff only by an hourly basis. Id. Plaintiff was told that this type of litigation would cost more than $30,000. Id. Since Plaintiff makes $38.78 per hour, he states that he would have to work 773 hours to fund $30,000 in attorney's fees. Id. Plaintiff is the sole provider in his household. Id. Nonetheless, indigency alone does not warrant the appointment of counsel absent satisfying the other Tabron factors.

This record does not meet most of the Tabron factors, and, therefore, the Court finds that appointment of pro bono counsel is inappropriate at this time.  Cf. Parham, 126 F.3d at 461 (finding appointment appropriate where most factors are met).  For all the reasons set forth above, the Court denies Plaintiff's application for the appointment of pro bono counsel without prejudice.

**Conclusion**

A balancing of the factors set forth above does not weigh in favor of granting Plaintiff's request for counsel at this time.  Therefore, Plaintiff's application of the appointment of pro bono counsel [D.E. 2] is denied without prejudice.


So Ordered,

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**