UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ANTHONY RODRIGUEZ,<br><br>*Plaintiff*,<br>v.<br>VERIZON COMMUNICATIONS,<br><br>*Defendant*. | Civil Action No. 16-4202<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on cross-motions for summary judgment filed by pro se Plaintiff James Anthony Rodriguez ("Rodriguez" or "Plaintiff"), ECF No. 29, and by Defendant Verizon New Jersey Inc. ("Verizon" or "Defendant"), ECF No. 28. For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

This case arises out of a request for particular workplace accommodations by a Sabbath-observing employee. Plaintiff has been employed by Verizon as a Facilities Technician since November 2006. Plaintiff's R.56.1 Statement of Material Facts (hereinafter "Pl. SOMF") ¶ 1, ECF No. 29. In that capacity, Plaintiff installs telephone, internet, and television services for Verizon on customers' premises. Id.; Defendant's R.56.1 Statement of Material Facts (hereinafter "Def. SOMF") ¶ 2, ECF No. 28.5. Plaintiff works out of Verizon's Grove Street location in Jersey City, New Jersey. Def. SOMF ¶ 1. In January 2008, Plaintiff became a member of the Living Church of God, a Christian denomination whose members observe a weekly Sabbath from sunset on Friday to sunset on Saturday in addition to 10 to 12 holy days per year. Pl. SOMF ¶ 2; Def. SOMF ¶¶

1

17-18; Rodriguez Deposition Transcript ("Rodriguez Dep.") 70:5-13. In July 2015, Plaintiff became a member of "the Church of God, a Worldwide Association," another religious institution within the same denomination whose members observe the same Sabbath and holy days. Pl. SOMF ¶ 2; Def. SOMF ¶¶ 17-18. Plaintiff's sincerely held religious beliefs prohibit him from working during his weekly Sabbath or during the holy days. Pl. SOMF ¶ 2. Plaintiff has regularly informed Verizon of such since 2009. Def. SOMF ¶ 41; Rodriguez Dep. 96:9-97:19.

Verizon Facilities Technicians who work eight-hour shifts, as Plaintiff does, rotate through four possible schedules or tours. Def. SOMF ¶ 12. Facilities Technicians may be scheduled to work from Sunday to Thursday, 7:30 a.m. to 4:30 p.m.; Monday to Friday, 7:30 a.m. to 4:30 p.m.; Monday to Friday, 11:00 a.m. to 8:00 p.m.; and a Monday to Saturday schedule where Facilities Technicians work on Saturday and on four of the five preceding work days. Id. ¶ 13. The day off for this Saturday schedule "differs every week." Id. The Sunday to Thursday shift pays an additional "four hours;" the Monday to Friday, 11:00 a.m. to 8:00 p.m. shift pays an additional "10 percent [of] current pay." Id. ¶ 14. Facilities Technicians rotate through these four shifts because Verizon operates seven days per week. Id. ¶ 12. A "department off-site" creates the schedule and Facilities Technicians receive notice of their upcoming schedules "about a month in advance." Id. ¶¶ 8, 11.

Plaintiff, like all Facilities Technicians at Verizon, is a member of the International Brotherhood of Electrical Workers ("IBEW"), and the terms and conditions of his employment are governed by a collective bargaining agreement ("CBA") between the IBEW and Verizon. Def. SOMF ¶ 4. The CBA requires Verizon to keep Sunday assignments "to as low a number as will meet the service needs of the business" and requires Verizon to issue periodic reports concerning the number of Sunday assignments to the IBEW. Id. ¶ 10. Per the CBA, Plaintiff receives three

weeks paid vacation, four personal paid days off and one unpaid day off. Id. ¶¶ 5-6. According to the CBA, two of the three weeks of vacation must be taken in blocks; however, Verizon does "not enforce[]" this requirement, and has allowed Plaintiff to "take a day at a time." Id. ¶ 7.

During his employment at Verizon, Plaintiff has been scheduled for shifts that conflict with his Sabbath observance. In months that have four Saturdays, Plaintiff is typically scheduled for two of those Saturdays; in months with five Saturdays, Plaintiff is typically scheduled for three of those Saturdays. Id. ¶ 16. However, since he joined the Living Church of God and began observing his Sabbath in 2008, Plaintiff has not actually worked a single shift that conflicts with his Sabbath. Id. ¶¶ 19-22, 32; Rodriguez Dep. 91:24-92:4, 111:8-10. When assigned to a Saturday shift, Plaintiff has been permitted to swap shifts with another Facilities Technician or to take a paid or unpaid day off.[1] Def. SOMF ¶ 21. And when assigned to the Monday to Friday, 11 a.m. to 8 p.m. shift during the winter months, Plaintiff has been permitted to switch to the 7:30 a.m. to 4:30 p.m. schedule on Fridays so that he can cease working before sundown. Id. ¶ 20.

Plaintiff contends, however, that this arrangement still fails to adequately accommodate his religious requirements. He asserts that his religious tenets not only require that he not work on his Sabbath, but also prevent him from making others work—i.e. by swapping shifts with them—on his Sabbath, and that he has informed Verizon of such. Rodriguez Dep. 78:11-21, 96:9-97:17, see also Pl. SOMF ¶¶ 3, 8.[2] That Plaintiff has not had to work during his Sabbath is not the basis

---

[1] From 2008 until February 2015, Plaintiff avoided working on his Sabbath by swapping shifts with other Facilities Technicians. He maintains that the practice of shift swapping was "against [his] religious beliefs, but [he] did it anyway." Rodriguez Dep. 78:11-12. In February 2015, he stopped swapping shifts and began only taking paid and unpaid days off in order to avoid working during his Sabbath. Id. 82:22-24.

[2] Plaintiff's Statement of Material Facts ("SOMF") contains few citations to sworn or record evidence as required by Fed. R. Civ. P. 56(c). Because Plaintiff's statements in his SOMF concerning his own religious beliefs are corroborated by his own deposition testimony, the Court will credit these statements in deciding the instant Motions.

3

of his claim; rather he claims that Verizon has nonetheless has failed to accommodate him[3] by requiring him to swap shifts. Because he did not want to ask others to work on the Sabbath, he was effectively forced to use all of his paid and unpaid days off to observe his religious obligations. By assigning him to work on approximately 26 Saturdays per year[4] and providing him with 19 paid days and one unpaid day off per year, Verizon has failed to adequately accommodate his religious needs, Plaintiff claims.[5] He has kept a running spreadsheet of the hours that he has been assigned that conflict with his Sabbath, whether he used a paid or unpaid day to observe his Sabbath, and how much pay he believes he lost in order to observe his Sabbath. Pl. SOMF ¶ 15; Def. SOMF ¶ 46. He estimates that, since May 2015, he has "lost" $13,993.03. Pl. SOMF ¶ 14.[6]

Verizon has twice offered Plaintiff a transfer to a construction position with fewer Saturday shifts. Def. SOMF ¶¶ 25-26. Plaintiff rejected this transfer because the offered position would reduce, but not eliminate, his need to take vacation and personal days on Saturdays and would provide him with fewer opportunities to accrue overtime benefits. Id. ¶ 27; Rodriguez Dep. 119:18-120:12. He stated in a written response to the offer that such a transfer would result in him earning approximately $5,000 to $10,000 less per year. Def. SOMF ¶ 28.

---

[3] Plaintiff has not identified any disciplinary or retaliatory consequences for swapping shifts or taking days Saturdays off other than a general attitude of "reluctan[ce]" from his supervisors when he brings up the subject of his accommodations. Rodriguez Dep. 84:17-85:10, 111:7. Plaintiff identified an incident where he was "written up . . . in 2011, sometime after [he] told [his supervisor] about [his] religious beliefs," but then admitted that the incident was related to his failure to lock his truck and that "as far as [he knew]," it had nothing to do with his observance of his Sabbath. Def. SOMF ¶ 35.
[4] This figure is based on the Court's understanding that scheduling Plaintiff for three Saturdays per month in months with five Saturdays and two Saturdays per month in months with four Saturdays results in scheduling Plaintiff for approximately every other Saturday, or half of the 52 Saturdays per year. See Def. SOMF ¶ 16.
[5] See Rodriguez Dep. 88:3-5 (Plaintiff stating that he believes he "shouldn't have to use all [his] time off"); id. at 112:1-10 (Plaintiff stating that he believes Verizon is not giving him the accommodation he believes the law requires).
[6] This figure is unsupported by sworn evidence as is required by Rule 56(c).

4

Instead, Plaintiff seeks a specific accommodation: rather than rotate him through the four possible schedules for Facilities Technicians, Verizon should rotate him through the three that do not interfere with his Sabbath observance and allow him to use his vacation and personal days to observe the 10 to 12 holy days and for any vacation or personal emergencies that arise. Rodriguez Dep. 90:7-10; Pl. SOMF ¶ 15; Def. SOMF ¶ 44; Amended Complaint, ECF No. 19. Plaintiff brings this action <u>pro se</u> under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, insisting that anything less amounts to discrimination for failure to accommodate his religious practices. Am. Compl., ECF No. 19.

On April 11, 2016, Plaintiff received a Notice of Right to Sue from the EEOC. Def. SOMF ¶ 50. On July 8, 2016, Plaintiff filed the instant action. ECF No. 1. Plaintiff seeks back pay for the paid vacation and personal days and the unpaid days he used to observe his Sabbath, along with reimbursement for "legal consultations" and punitive damages.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986). "Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." <u>Miller v. Ind. Hosp.</u>, 843 F.2d 139, 143 (3d Cir. 1988).

When the Court considers a motion for summary judgment, "all facts and inferences are construed in the light most favorable to the non-moving party." <u>Boyle v. Cty. of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998). However, "a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but

5

must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995). Although the Court must liberally construe submissions by pro se litigants, such submissions "are still required to comply with Rule 56." Schock v. Baker, 663 F. App'x 248, 252 (3d Cir. 2016).

### III. ANALYSIS

Verizon argues that Plaintiff has failed to allege a prima facie case of religious discrimination in violation of Title VII because he has failed to demonstrate that he suffered any adverse or disciplinary consequences for observing his Sabbath. Alternatively, Verizon argues that it has reasonably accommodated Plaintiff and that to provide Plaintiff's requested accommodation would constitute an undue hardship on Verizon. The Court disagrees that Plaintiff has failed to plead a prima facie case of discrimination, but agrees that Verizon has reasonably accommodated him.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his **compensation**, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). To establish a prima facie case of religious discrimination, a plaintiff must demonstrate "'(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement.'" E.E.O.C. v. GEO Group, Inc., 616 F.3d 265, 271 (3d Cir. 2010) (citing Webb v. City of Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009)).

6

Plaintiff has demonstrated that he meets the prima facie test. He holds a sincere religious belief that conflicts with working on his Sabbath and holy days and with asking others to work in his place on those days. Pl. SOMF ¶ 2, Rodriguez Dep. 78:11-21, 96:9-97:17. He has regularly informed Verizon of such. Def. SOMF ¶ 41; Rodriguez Dep. 96:9-97:19. And while he has not alleged that he was disciplined or terminated for refusing to work on his Sabbath (indeed, Plaintiff is still employed by Verizon), he has demonstrated that he suffered at least some pecuniary harm because he had to exhaust personal and vacation days and take unpaid days off to avoid working during his Sabbath and holy days. See Pl. SOMF ¶ 15; Def. SOMF ¶ 46.

Once a plaintiff has pled a prima facie case of religious discrimination in violation of Title VII, the burden "'shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business.'" E.E.O.C., 616 F.3d at 271 (citing Webb, 562 F.3d at 259). Verizon has demonstrated that it reasonably accommodated Plaintiff's religious beliefs.

The undisputed facts demonstrate that Verizon has made multiple good-faith attempts to reasonably accommodate Plaintiff's religious obligations. The record is clear that Plaintiff has never actually had to work on his Sabbath or holy days, nor has he faced any negative employment consequences for this. Def. SOMF ¶¶ 19-22, 32. Under Verizon policy, Plaintiff is permitted to swap with other employees who do not share Plaintiff's religious briefs, an accommodation plaintiff has rejected. Alternatively, Verizon has allowed him to take his vacation days one at a time, rather than in a block (as required by the CBA) to accommodate his Sabbath and holy day observance. Id. ¶¶ 7, 30. Verizon has allowed him to take unpaid days off in excess of the one allotted to him under the CBA. Id. ¶¶ 21, 30. And Verizon has offered—at least twice—to shift

7

Plaintiff into a role with fewer Saturday assignments to reduce the number of vacation, personal, and unpaid days that he must take. Id. ¶¶ 24-29, 31.

Plaintiff counters that these accommodations are unreasonable. He argues that shift swapping, while perhaps an acceptable accommodation for other Sabbath observers, is not an acceptable accommodation for **him** as it violates his religious practices. Plaintiff's Brief at 13-14, ECF No. 29. He argues that requiring him to use of all of his vacation days and a large number of unpaid days off is unreasonable as it places him in a financially "vulnerable position." Id. The Court disagrees.

The Supreme Court has found accommodations such as those offered by Verizon reasonable. In Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), the Court held that an employer reasonably accommodated a Sabbath-observing employee (and Worldwide Church of God member) when it met with him to "attempt[] to find a solution," accommodated the observance of his religious holidays, attempted to allow him to swap shifts, and "attempted without success to find" him a different position, even though the employer eventually fired the employee for refusing to work during his Sabbath. Id. at 77. And in Ansonia Bd. of Educ. v. Philbrook, the Supreme Court held that allowing a Sabbath-observing employee (and Worldwide Church of God member) to take unpaid leave in excess of the days allocated to him by contract so that he could observe his holy days was a reasonable accommodation. 479 U.S. 60, 70-71 (1986). The Supreme Court wrote:

> The provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work. Generally speaking, "[t]he direct effect of [unpaid leave] is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status."

Id. (citing Nashville Gas Co. v. Satty, 434 U.S. 136, 145 (1977)). Plaintiff has not alleged that his use of unpaid leave has resulted in reduced "employment opportunities or job status"—only that he has not earned money he could have earned had he been assigned to a different shift—so Plaintiff's argument that the accommodation is unreasonable must fail. Id.; see also Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149, 1156 (10th Cir. 2000) (holding that allowing an employee to observe his Sabbath through shift swaps and unpaid leave was a reasonable accommodation); Ellington v. Murray Energy, No. 07-766, 2010 WL 3855277, at *11 (D. Utah Sept. 30, 2010) (holding that an employer reasonably accommodated an employee by allowing him to swap shifts or use paid and unpaid days to observe his Sabbath); Guy v. MTA New York City Transit, No. 10-1998, 2012 WL 4472112, at *8 (E.D.N.Y. Aug. 6, 2012), R&R adopted, 2012 WL 4472098 (E.D.N.Y. Sept. 26, 2012) (rejecting Plaintiff's argument that his employer should "change his work schedule so that he had Saturdays off, instead of requiring him to use paid and unpaid leave, [because] Title VII 'does not require that the employer offer the specific accommodation the employee seeks.'") (citing Durant v. Nynex, 101 F. Supp. 2d 227, 234 (S.D.N.Y. 2000)); Shelton v. Univ. of Med. & Dentistry of New Jersey, 223 F.3d 220, 225 (3d Cir. 2000) (citing Philbrook, 479 U.S. at 68-69)) ("[A] sufficient religious accommodation need not be the 'most' reasonable one (in the employee's view), it need not be the one the employee suggests or prefers, and it need not be the one that least burdens the employee."). That Plaintiff maintains he cannot swap shifts without violating his religious practices does not change the fact that unpaid leave has consistently been found to be a reasonable accommodation, and is so here.

Here, the undisputed facts lead to the conclusion that Verizon has made a good faith effort to reasonably accommodate Plaintiff's religious beliefs: allowing him to swap shifts; alternatively allowing him to take single paid and unpaid vacation days, contrary to the CBA; offering him

another position that would require fewer Sabbath shifts (and allow him to avoid unpaid days off); allowing him to take more unpaid days than the CBA allows. These various alternatives speak to good faith and reasonableness. Because Verizon has demonstrated that it "reasonably accommodated [Plaintiff's] religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." Shelton, 223 F.3d at 226 (citing Philbrook, 479 U.S. at 68). Accordingly, Verizon is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 28, is **GRANTED** and Plaintiff's Motion for Summary Judgment, ECF No. 29, is **DENIED**. An appropriate Order accompanies this Opinion.

**Dated: May 30, 2018**

                                              */s Madeline Cox Arleo*
                                              **Hon. Madeline Cox Arleo**
                                              **United States District Judge**